STATE, NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, PROSECUTOR, v. YARD, COMMISSIONER, &c.

1. In laying a tax under the railroad taxation act of April 2d, 1873, (*Rev.*, p. 1166,) for the benefit of counties, townships and cities, the commissioner of railroad taxation performs the same duties as a township assessor under the general tax law, and the proceedings for review are the same as in cases of ordinary taxes, except that such taxes are not subject to review before the local commissioners of appeal in cases of taxation. The writ of *certiorari* to review such taxation should be directed to the collector of taxes for the township or city in whose hands the duplicate of taxes is placed for collection, and the proceedings under the writ, with respect to the review and correction of the assessment, will be the same as in ordinary cases.

2. Neither the charter of the Hoboken Land and Improvement Company (*Pamph. L.* 1838, p. 92,) nor the act incorporating the Weehawken Docks (*Pamph. L.* 1867, p. 398,) contains any grant of lands under water, the title to which was in the state. These incorporating acts operated only as grants of corporate franchises.

3. The New York, Lake Erie and Western Railroad Company as the grantee of the Weehawken Docks, is not liable to taxation on lands under water in front of their docks, which have never been reclaimed, and over which the tide ebbs and flows. The title to such lands is in the state.

4. In estimating the value of lands lying upon tide water, for the purpose of taxation, adjacency to the tide waters is a circumstance which should enter into their taxable valuation, and in so far as the market value of the land is enhanced by reason of its frontage on the water, and of the privileges arising from its location, it should be estimated at such enhanced valuation for the purposes of taxation.

5. *State* v. *Jersey City*, 1 *Dutcher* 525, explained.

On error to the Supreme Court. See *ante p.* 121.

For the plaintiff in error, *C. Parker.*

*Contra, P. Bentley.*

The opinion of the court was delivered by

DEPUE, J. The assessment of taxes under review was made against the prosecutors upon certain lands and improvements in the township of Weehawken, in the county of Hudson.

The description of the property taxed and the valuation thereof was made by the commissioner of railroad taxation, pursuant to the provisions of the railroad taxation act of April 2d, 1873. *Rev., p.* 1166. By that act all railroad companies occupying and using railroads in this state, whether as lessees or otherwise, are made liable to taxation upon all real property by them occupied, used or owned, excepting their main stem or road-bed and track, not exceeding one hundred feet in width, at the rate of one per centum on a valuation thereof, and of all improvements made thereon, not by way of repairs. This tax is imposed for the benefit of the counties, townships and cities in which such premises are situate. The statement of the property on which the tax is to be laid and the valuation thereof are made by the commissioner of railroad taxation; the tax is to be paid to the collector of the township or city in which the premises are situate, and all laws for the collection of ordinary taxes in such township or city are made applicable, as far as possible, to the collection thereof.

In laying a tax under this act, the commissioner of railroad taxation performs the same duties as a township assessor under the general tax law, and the proceedings for review are the same as in cases of ordinary taxes, except that such taxes are not subject to review before the local commissioners of appeal in cases of taxation. The writ of *certiorari* to review such taxation should be directed to the collector of taxes for the township or city in whose hands the duplicate of taxes is placed for collection, and the proceedings under the writ with respect to the review and correction of the assessment will be the same as in ordinary cases.

The writ of *certiorari* in this case does not appear in the printed case. It will be assumed that the writ was directed to the collector of the township, as it should have been.

The valuation on which the assessment was made is $779,-275. The property on which it was made consists of thirty acres of land, valued at $525,000, and sundry improvements, on which a valuation was made amounting to the sum of $254,275.

No objection is made to the valuation of the improvements, nor, indeed, to that of the lands.

The prosecutors derived title by a deed from Jay Gould, trustee, &c. The description is of a tract lying east of a defined line upon the upland, two thousand feet in length, and bounded on the north and south by lines drawn at right-angles to the line last mentioned, and extending to the middle of the Hudson river, together with all the land under water in said river easterly and in front of said upland and within the said northerly and southerly lines, as far easterly as the right and title of the party of the first part to the said land under water extends, and all the water-rights and other rights and privileges of the said party of the first part, whether derived by legislative act or otherwise, to reclaim, improve and appropriate to their own use the said land under water within said lines, to the middle of the Hudson river.

This tract is situate upon the tide waters of the Hudson, and it is admitted in the state of the case that only ten acres

and four-tenths of an acre of the thirty acres assessed are filled up and solid lands, and that the residue are lands under water below high-water mark, over which the tide ebbs and flows, and of which no reclamation has as yet been made. The contention of the prosecutors is, that for so much of the lands as is covered with water, the title is in the state, and the prosecutors, therefore, are not taxable thereon.

The prosecutors' grantor derived his title from "The Weehawken Docks," a corporation created by an act passed March 22d, 1867. *Pamph. L., p.* 398. By this incorporating act "The Weehawken Docks" was authorized to receive grants and conveyances of any lands, water-fronts, bulkheads, docks, piers, warehouses, or other property, rights and interests, whether legal or equitable, in the said county of Hudson, * * * and to improve, occupy and use the same premises or any part thereof, by erecting thereon docks, piers, bulkheads and warehouses, and railways, with proviso that the company should not, by anything in the act contained, be construed to be entitled to or to purchase any water-rights or any land under water not heretofore granted by the state to the person or corporation from whom this company may purchase such water-rights or land covered with water, nor to authorize any improvement, occupation or use of any land now covered with water, by erecting thereon docks, piers, bulkheads or warehouses, railways, or other things, unless such land under water shall heretofore have been granted by the state to the person or corporation from whom this company shall purchase water-rights or lands covered with water.

The Weehawken Docks Company acquired its title from the Hoboken Land and Improvement Company, a corporation created by act of the legislature passed February 21st, 1838. *Pamph. L, p.* 92. By its charter the latter company was made capable of purchasing, using, holding, letting and improving, and disposing of such real and personal property as might be necessary for the objects of its incorporation, and was empowered to improve all such lands as the company were authorized to own or purchase, with "power to purchase,

fill up, occupy, possess and enjoy all land covered with water fronting and adjoining the lands that may be owned by them, and to construct thereon, wharves, harbors, piers and slips, and all other structures requisite or proper for commercial and shipping purposes."

Neither of the incorporating acts referred to contains any grant of lands the title to which was in the state. They operated only as grants of corporate franchises; and such grants, by the settled law of this state, will not be construed to give by implication, any title to lands of the state below the high-water line. *Stevens* v. *P. & N. R. R. Co.*, 5 *Vroom* 532. As riparian owners, these corporations respectively would have annexed to their title to the upland a privilege incident to the ownership of lands on tide water, of reclamation, and the acquisition thereby of title to the lands reclaimed. Power to erect and construct the works necessary to the execution of this privilege is enumerated among the franchises granted by their charters. But the inchoate right which the owner of the upland has to acquire an exclusive title to lands under water by wharfing out or otherwise improving the same, gives him no property in the land before it is reclaimed; he has a mere license, revocable by the legislature at any time before it shall be executed. *Stevens* v. *P. & N. R. R. Co.*, *supra*; *Gough* v. *Bell*, 2 *Zab.* 441; *State* v. *Jersey City*, 1 *Dutcher* 525. This was the construction put upon the charter of the Hoboken Land and Improvement Company, in the case cited in the opinion in the court below. *Hoboken Land and Improvement Co.* v. *Mayor of Hoboken*, 7 *Vroom* 540, 545, 550. In that case the lands recognized as in the private ownership of the company had been obtained by reclamation; the license had been executed.

Neither by the common law of this state nor by the charters of the corporations through which the prosecutors derived their title, have the prosecutors any title to the lands under water. The prosecutors are not taxable under the designation of land for so much of the premises taxed as lies under water.

But it is contended by the defendant in error that this

N. Y., Lake Erie and Western R. R. Co. v. Yard.

assessment should not be set aside, for the reason that the residue of the lands embraced in the assessment are equal in value to the valuation of the whole assessment. The consideration of $1,620,000, named in the deed from the docks company to Gould is referred to as evidence of the value of the tract conveyed, with the privileges annexed thereto. In *State* v. *Jersey City, supra,* the Supreme Court affirmed an assessment on lands above and below high water. But there it was agreed that the aggregate value assigned to the whole was not greater than the proper value of the part above high-water mark, and the court, therefore, regarded the assessment as an assessment of property above high-water mark—the value of which was arrived at by adding to it the value of the water-rights incident thereto. It is possible, that when this assessment comes before a commissioner, a like result may be obtained; but, as the case stands, we can make no such intendment. The valuation in the assessment is by the acre, $17,500 for each and every acre of the land designated in the assessment.

The judgment should be reversed, to the end that it may be referred to a commissioner to ascertain and report the true value of the premises on which a tax may lawfully be laid against the presecutors.

In making an estimate of the value of the lands of the prosecutors, adjacency to the tide-waters is a circumstance which should enter into their taxable valuation; and, in so far as the market value of the land is enhanced by reason of its frontage on the water, and of the privileges arising from its location, it should be estimated at such enhanced valuation for the purposes of taxation. *State, Trask, pros.,* v. *Carragan,* 8 *Vroom* 264.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, SCUDDER, VAN SYCKEL, CLEMENT, COLE, DODD, GREEN, WHITAKER—10.